Hillsborough,
No. 6106.

ARTHUR THERIAULT

*v.*

RONALD ARTHUR VANASSE.

April 30, 1971.

*Bois & Laflamme* ( *Mr. Maurice P. Bois* orally ) for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* ( *Mr. Gross* orally ) for the defendant.

DUNCAN, J. The plaintiff seeks to recover in an action of case for personal injuries suffered when he was struck by an automobile operated by Laurier Petrin while crossing Elm Street in Manchester on February 8, 1965. There was a trial by jury with a view, and a verdict was returned for the defendant. The questions of law presented by the plaintiff's exceptions to certain instructions to the jury and to the denial of certain of his requests for instructions were reserved and transferred by the Presiding Justice ( *Flynn,* J. ).

According to the testimony of the plaintiff, he had spent the afternoon of February 8, 1965 at the quarters of Post 79 of the American Legion on the west side of Elm Street, playing cribbage, during which time he had had two drinks of whisky accompanied by two beers. Shortly after 5:00 P.M. he left, intending to keep an engagement on Union Street by proceeding easterly on Penacook Street which intersects Elm Street north of the scene of the accident. He testified that he walked northerly on the west side of Elm Street after coming out of the Legion quarters by way of a drive-

way from the parking lot of an A & P store adjoining the Post on the north. He testified that he entered a crosswalk opposite the entrance to the A & P store which was in line with the northerly side of Blodgett Street on the opposite side of Elm Street. He testified that he saw little or no traffic, proceeded at a "slow trot" beyond the center line of Elm Street, to a point about mid-way of the two northbound lanes, then turned diagonally to the northeast toward the parking lane, saw that the easterly sidewalk was "rough and slushy with snow," and so continued north in the parking lane to a point about halfway to Penacook Street, when he was struck on the right leg by a vehicle which he had not seen. The vehicle which struck him was operated by Laurier Petrin, who had been proceeding north on Elm Street in the right-hand northbound lane.

At the same time, the defendant had been proceeding northerly in the left-hand northbound lane. From at least as far south as Bridge Street the defendant's vehicle and the Petrin vehicle had been abreast of each other, from time to time, as they traveled north. Both drivers testified that as they approached Blodgett Street, a truck came out of the A & P driveway, the defendant swerved his car slightly to the right, and Petrin swerved to his right into the parking lane. As Petrin was reentering the easterly travel lane, he first saw the plaintiff a few feet ahead of him, applied the brakes, and slid into him, striking him with the left side of his vehicle.

The defendant testified that the truck coming out of the driveway crossed the yellow center line, and that as he, the defendant, veered slightly to the right, he saw the plaintiff come out from behind the truck, "staggering" in front of him; that the plaintiff "ran right past" his car, he heard the noise of brakes as he resumed his speed, but that he did not know what happened to the plaintiff until later in the day.

According to a witness who came out of the A & P store just as the plaintiff was passing it, the plaintiff started across Elm Street diagonally from a point north of the crosswalk which the plaintiff had testified he used. There was evidence that blood spots where the plaintiff fell to the pavement were thirteen feet west of the easterly curb of the fifty-eight foot highway.

In submitting the case to the jury, the trial court instructed them that a public highway is open for the use of all the public, and that the motorist and the pedestrian must each "anticipate the probable use of the highway by other travellers, and use re-

sonable care to avoid doing injury to the other." With specific reference to the parties, the court outlined the duty of each to use reasonable care, and charged the defendant with a duty to use reasonable care to prevent injury to pedestrians "either by [the defendant's own] conduct or by his conduct concurring with conduct of another."

Pursuant to requests by the plaintiff, the court instructed the jury concerning pertinent provisions of RSA 262-A:33 relating to the right of way of pedestrians upon crosswalks (subsections (I) and (II)), as well as the provisions of RSA 262-A:34, requiring pedestrians crossing in other than crosswalks to yield the right of way to vehicles. However, the court did not grant the plaintiff's eighth request, that RSA 262-A:35 be given. This section provides as follows: "Drivers to Exercise Due Care. Notwithstanding the foregoing provisions of this chapter every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any obviously confused or incapacitated person upon a roadway." Instead, the court instructed the jury: "Now despite the rights of each . . . under the statute, a motorist has a duty to exercise care in operating his motor vehicle so that his conduct in operating same would not cause, or help to cause another operator of a motor vehicle to collide with a pedestrian, and also to give a warning by sounding his horn when necessary, when a reasonably prudent person would do so." Thus in effect, section 35 was adapted to the facts of the case, without indicating any statutory source.

The plaintiff excepted to the denial of his request that section 35 be given, and argues that by reading from three statutory sections bearing upon the conduct of the plaintiff, and declining to give section 35, "the Court . . . prejudicially focused the attention of the jury on the fact that if the plaintiff was not on the crosswalk at the time of the accident he was in an inferior position to that of the vehicle."

Even though the defendant did not collide with the plaintiff, it would have been proper for the court to charge upon the duty imposed by section 35, provided additional instructions applied it to the evidence. The jury could have disbelieved the defendant's testimony that he swerved to the right to avoid a truck in the adjacent southbound lane, and adopted the plaintiff's testimony that there were no moving vehicles in the vicinity as he crossed.

It could then have found that the defendant swerved because the plaintiff crossed in front of him, and that the reason for his doing so was his failure to take earlier precautions to avoid striking him. The issue is whether the trial court erred because it instructed the jury without specific reference to section 35, but adapted its provisions to the defendant's common-law duty. We are of the opinion that this was not error. Had the court merely given the statute verbatim, as requested, its significance might have been lost to the jury in view of the fact that the defendant did not collide with the pedestrian. Thus the instructions given were more favorable to the plaintiff than those he requested, since defendant's duty was defined in terms of what actually occurred.

In addition, account must be taken of other instructions in the charge which served to place breaches of common-law duty on a par with violations of statute. Thus the jury were told that the pedestrian and the motorist each had certain rights in using the highway, and that each "must anticipate the probable use of this highway by other travellers and use reasonable care to avoid doing injury to the other." They were then told that failure to fulfill any duties, "that is the common law duties, or a failure to comply with any one of these statutes, would constitute negligence, and if . . . a proximate cause . . . would constitute legal fault, and make that person legally responsible."

We conclude that the charge as a whole was not prejudicial to the plaintiff even though the instructions complained of were couched in terms of common law rather than statutory duty. *See Manor* v. *Gagnon*, 92 N.H. 435, 439, 32 A.2d 688, 692 ( 1943 ); *Locke* v. *Cressy Co.*, 108 N.H. 116, 229 A.2d 181 ( 1967 ). The instructions given adequately fulfilled the obligation of the trial court as defined in the cases cited by the plaintiff: *Davis* v. *State*, 94 N.H. 321, 52 A.2d 793 ( 1947 ); *Bourque.* v. *Strusa*, 92 N.H. 94, 25 A.2d 127 ( 1942 ); *Naramore* v. *Putnam*, 99 N.H. 175, 177, 106 A.2d 568, 570 ( 1954 ).

*Judgment on the verdict.*

All concurred.